**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Reed,                     ) | CV 10-2324-PHX-JAT |
|             Plaintiff,         ) | |
|     v.                         ) | **ORDER** |
| Helen Purcell, Karen Osborne, Maricopa County, ) | |
|             Defendants.        ) | |

Upon consideration of Plaintiff's motion for temporary restraining order, and upon hearing evidence on November 1, 2010, the Court finds:

**FINDINGS OF FACT**

1. Plaintiff Mark Reed is a United States citizen and a citizen of Arizona, residing in Scottsdale, Arizona, in the County of Maricopa, within the jurisdiction of this Court.

2. Defendant Helen Purcell is Maricopa County Recorder, an office created by the Arizona Constitution, art. XII, § 3 (2010). *See also* ARIZ. REV. STAT. ANN. ("A.R.S.") § 11-401 (2010) (listing county officers); A.R.S. § 11-409 (granting officers the authority to hire staff). Defendant Purcell is sued in her individual capacity and in her official capacity as Maricopa County Recorder.

3. Defendant Purcell is responsible for administering the Elections Department which conducts all national, state and county wide elections, and provides support for cities, towns, school districts, special districts, and other jurisdictions. Specifically, Defendant

1 Purcell provides election support to those jurisdictions.

2     4. Defendant Karen Osborne is Maricopa County Director of Elections. Defendant Osborne is sued in her individual and official capacity.

4     5. Defendants Purcell and Osborne acted under color of law at all times material to this complaint.

6     6. Defendant Maricopa County is a subdivision of the State of Arizona, organized pursuant to A.R.S. §§ 11-101, 11-105 and 11-201. Defendant County is a jural entity that can sue and be sued. A.R.S. § 11-201(A)(1). It exists for purposes of self-governance and to aid in the administration of Arizona law. The powers of Maricopa County are exercised by the Maricopa County Board of Supervisors, as well as agents and officers acting under the Board's authority. A.R.S. § 11-201(A)(1).

12     7. Maricopa County Board of Supervisors consists of officers created by the Arizona Constitution, art. XII, § 3. The Board's "duties, powers, and qualifications" are prescribed by law. *Id.* at § 4. Among other things, the Board is responsible for appointing "for each election precinct one inspector, one marshal, two judges and not less than two clerks of election." A.R.S. § 16-531(A). The Board of Supervisors or other authority in charge of elections is required to conduct a class for the instruction of inspectors and judges. A.R.S. § 16-532(A).

19     8. In Maricopa County, the Recorder and Elections Director are responsible for hiring and training poll workers.

21     9. Maricopa County is responsible for the policy, practices and customs of the Board of Supervisors, County Recorder, and Director of Elections.

23     10. Arizona Revised Statutes, Section 16-515 provides:

> a person shall not be allowed to remain inside the seventy-five foot limit while polls are open, except for the purpose of voting . . . and no political or electioneering materials may be displayed within the seventy-five foot limit.

27 A.R.S. § 16-515.

1  11. "Knowingly electioneer[ing] on election day within a polling place . . ." is a class 2 misdemeanor.  A.R.S. § 16-1018.

3  12. When Plaintiff Mark Reed votes on November 2, 2010, he intends to wear a t-shirt that states "Tea Party: Principles Not Politicians," with the insignia "Don't Tread On Me."

6  13. The only recognized political parties in the State of Arizona which will appear on the upcoming November 2, 2010 ballot are the Democratic Party, the Green Party, the Libertarian Party, and the Republican Party.

9  14. The "tea party" is not recognized as a political party by the State of Arizona.

10  15. The term "tea party" does not appear on the ballot for the statewide general election in Maricopa County.

12  16. Maricopa County poll workers have been instructed to enforce the State's prohibition of the display of any political or electioneering material within 75 feet of a polling place against any voter wearing a "tea party" t-shirt.

15  17. Specifically, Maricopa County poll workers will ask any voter wearing a "tea party" t-shirt to remove or cover the shirt before voting. If the voter refuses to comply, the poll worker is to allow the voter to vote, but to record the name and voter identification number of the voter and file an incident report.

**CONCLUSIONS OF LAW**

*Jurisdiction and Venue*

The Court has personal jurisdiction over the parties to this action.  The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a) and 42 U.S.C. §1983.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

*Temporary Restraining Order*

"The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002).  To be entitled to temporary restraining order, Plaintiff must show:

- 3 -

[1] he is likely to succeed on the merits,

[2] he is likely to suffer irreparable harm in the absence of preliminary relief,

[3] the balance of equities tips in his favor, and

[4] an injunction is in the public interest.

*American Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citing *Winter v. Natural Resources Defense Council*, --- U.S. ----, 129 S.Ct. 365, 374 (2008)). Alternatively, "A preliminary injunction is appropriate when a plaintiff demonstrates ... that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor. Of course, plaintiffs must also satisfy the other *Winter* factors, including likelihood of irreparable harm." *Alliance for Wild Rockies v. Cottrell*, Slip Op. at 10871 (9th Cir. July 28, 2010) (internal citation omitted).

*Likelihood of Success on the Merits*

Plaintiff's complaint brings four claims, three against Defendant Purcell and Defendant Osborne and one against Maricopa County. At core, each of Plaintiff's claims against Defendant Purcell and Defendant Osborne allege that Maricopa County policy infringes on Plaintiff's First Amendment rights by prohibiting Plaintiff from voting while wearing a "tea party" t-shirt.

There are several interrelated constitutional concerns:

[1]  the constitutionality of A.R.S. § 16-515's ban on "political or electioneering materials" within a 75-foot zone of a polling place, without some limiting construction,

[2]  the constitutionality of A.R.S. § 16-515's ban on "political or electioneering materials" within a 75-foot zone of a polling place, as applied by Maricopa County as banning both express advocacy materials and issue advocacy materials,

[3]  whether Defendants discriminated against Plaintiff's viewpoint in violation of Plaintiff's equal protection rights, by issuing a clear instruction barring "tea party" apparel at the polls but failing to issue a similar instruction with regard to other similarly situated groups, and

[4]   whether Defendants violated Plaintiff's due process rights by failing to issue a clear objective standard defining "electioneering and political materials."

Under these facts, Plaintiff has shown a likelihood of success on the merits on at least the third and fourth theories.

*Viewpoint Discrimination*

The zone around a polling place is a public forum, where speech restrictions on time place, and manner must be viewpoint neutral and narrowly tailored to serve a significant governmental interest. *See Burson v. Freeman*, 504 U.S. 191, 196-97 (1992) (explaining that a law establishing a "campaign-free zone" around polling places barred speech in "quintessential public forums" including places "'devoted to assembly and debate,' such as parks, streets, and sidewalks"). Thus, [t]he State must show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.*, 504 U.S. at 198 (quoting *Perry Ed. Ass'n. v. Perry Local Educators' Ass'n.*, 460 U.S. 37, 45 (1983). In *Burson*, the United States Supreme Court found that a Tennessee law prohibiting all campaign activity within 100 feet of a polling place passed strict scrutiny and was constitutional. *Id.*, 504 U.S. at 211.

Alternatively, the zone around a polling place may be classed as a non-public forum. *See Marlin v. District of Columbia Bd. of Elections and Ethics*, 236 F.3d 716 (D.C. Cir. 2001) (reasoning that because "the interior of a polling place, is neither a traditional public forum nor a government-designated one" it is a nonpublic forum). Restrictions on nonpublic fora need only be reasonable and viewpoint neutral.

Whichever standard applies, Defendants' enforcement of A.R.S. 16-515 must be viewpoint neutral. While a total ban on all apparel indicating association with any group which engages in the civic debate, either by endorsing candidates or otherwise, may indeed be a viewpoint neutral restriction, here Defendants have singled out the "tea party" movement and specifically instructed poll workers to ban such apparel. Defendants have not given similar instructions to poll workers regarding apparel advertising similarly situated civic organizations such as labor unions, trade groups, or corporations. Indeed, Defendant

Osborne testified that an AFL-CIO t-shirt lacking a specific reference to political action, ***would not*** be electioneering material, while a "tea party" t-shirt, without any additional specific reference to political action, ***would*** be electioneering material. The Court finds that there is no viewpoint neutral principle to distinguish between "tea party" apparel and AFL-CIO apparel. Thus, Defendants have likely engaged in viewpoint discrimination and, thus, Plaintiff has shown a likelihood of success on the merits.

*Standardless Discretion*

The Constitution abhors the misuse of discretion as a license for arbitrary procedure. Defendants have not articulated any discernable standard in applying the Arizona electioneering law. None of the training manuals give a precise definition of "electioneering." Defendant Osborne even testified that electioneering is hard to define, but that "we know it when we see it." It is clear that Maricopa County will enforce A.R.S. 16-515 against Plaintiff for wearing a "tea party" shirt. Yet the "tea party" is not a recognized party in Arizona, and plaintiff's shirt makes no mention of express support or opposition of any candidate on the ballot, party on the ballot, or proposition on the ballot. Defendant Osborne testified that an "I [Love] PETA" shirt or an AFL-CIO shirt would not be electioneering, while a shirt with a marijuana plant logo would be electioneering. The Court cannot derive any clear standard from such a case-by-case adjudication.

Lacking a clear standard, voters have no certain method of determining whether their apparel is prohibited electioneering. Messages pertinent to the election can be found everywhere if one looks hard enough. Voters may even fear that their choice of a red and blue t-shirt may be prohibited because of the association of the color with the two major parties. In this way, Maricopa County's standardless discretion chills protected First Amendment expression and, thus, Plaintiff has shown a likelihood of success on the merits.

Having found likelihood of success under two of Plaintiff's theories, the Court will not proceed to examine Plaintiff's other theories at this time.

*Likelihood of Irreparable Harm, Balance of the Equities, and the Public Interest*

Factors 2, 3, and 4 of the *Winter* test–irreparable harm, balance of equities, and public

interest–are met under these facts. "The loss of First Amendment … freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998). Often, in cases involving "First Amendment rights … which must be carefully guarded against infringement … injunctive relief is clearly appropriate." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The "balancing of equities that is undertaken in a conventional equity case is out of place in dealing with rights so important as the modern Supreme Court considers the rights of expression to be." *Shondel v. McDermott*, 775 F.2d 859, 869 (7th Cir. 1985). Finally, courts "have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002). It "is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Comm.*, 23 F.3d 1071, 1079 (6th Cir. 1994). "In a First Amendment case, therefore, the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008).

Defendants allege that they may be unable to effectively communicate a modification of the A.R.S. 16-515 enforcement procedure to poll workers in the few hours between this decision and the 6:00 a.m. opening of the polls on November 2, 2010 and the potential for confusion amongst poll workers tilts the balance of the equities and the public interest against granting relief. The Court is satisfied that, by means of email, cell phones and mass media, Defendants will be able inform their poll workers of this Order.

*Bond Requirement*

Federal Rule of Civil Procedure 65(c) provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c). Despite this mandatory language, "Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v.*

*Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted). In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct. *Id.* Even more on point, courts have waived the bond requirement in free speech cases involving no harm to the defendant. *Baca v. Moreno Valley Unified School Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (waiving the bond requirement because "to require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public affected by the policy").

In the present case, Defendants have not requested a bond, nor have they submitted any evidence regarding their likely damages. It is also difficult to envision how Defendants would incur compensable costs or damages. Thus, the Court finds that this temporary restraining order will not likely result in any damages to Defendants and will waive the bond requirement.

Based on the foregoing findings and conclusions, **IT IS HEREBY ORDERED THAT:**

1) Plaintiffs' Motion for Temporary Restraining Order (Doc. 4) is GRANTED.

2) For purposes of the November 2, 2010 statewide general election, with regard to plaintiff or any other registered voter wearing a "tea party" t-shirt or any apparel that does not include express support for or opposition to:

(a) a candidate appearing on the ballot,

(b) a proposition appearing on the ballot, and/or

(c) a political party on the ballot,

Defendants and their agents and employees shall neither prevent any such voter from voting, nor record the name and voter identification number of any such voter on an incident report.

3) Defendants shall immediately disseminate, by website, phone, and other such means that are reasonably available, this Order to all poll workers and any employees, including inspectors, marshals, judges and volunteers, who will be working at polling sites throughout Maricopa County on November 2, 2010.

4)   This Order will go into effect upon entrance and expire after the close of all polling sites in Maricopa County on November 2, 2010.

5)   For good cause shown, the Court exercises its discretion and waives the requirement of a security bond accompanying this temporary restraining order.

DATED this 1st day of November, 2010.

James A. Teilborg
United States District Judge