**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Reed, ) | No. CV 10-2324-PHX-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Helen Purcell, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is Plaintiff's Motion for Award of Attorneys' Fees and Costs (Doc. 48), accompanied by Plaintiff's Memorandum of Points and Authorities in Support of Motion for Fees and Costs (Doc. 52). Plaintiff Mark Reed filed these motions pursuant to 42 U.S.C. §§ 1983 and 1988, Fed. R. Civ. P. 54(d)(2), and LRCiv 54.2. (Docs. 48, 52.) Defendants Maricopa County, Recorder Helen Purcell, and Elections Director Karen Osborne (collectively, "Defendants") responded with Defendants' Response to Plaintiff's Motion for Award of Attorneys' Fees and Costs (Doc. 49) and Defendants' Response in Opposition to Plaintiff's Memorandum in Support of Attorneys' Fees and Costs (Doc. 53).

**I.   Entitlement to Attorneys' Fees**

   **A.   Facts**

Plaintiff filed a complaint against Defendants on October 28, 2010, alleging violations of his First Amendment, due process, and equal protection rights pursuant to 42 U.S.C. § 1983. (Doc. 48 at 1.) Plaintiff's Complaint challenged Defendants' per se ban on tea-party

shirts at polling sites in Maricopa County and requested injunctive relief. (Doc. 1 at 4, 16.) Defendants' ban was based on their interpretation of Ariz. Rev. Stat. § 16-515. (Doc. 30 at 3.) At the time of the Complaint, A.R.S. § 16-515 stated: "a person shall not be allowed to remain inside the seventy-five foot limit while polls are open, except for the purpose of voting . . . and no political or electioneering materials may be displayed within the seventy-five foot limit. *Reed v. Purcell*, No. CV 10-2324, 2010 WL 4394289, at *1 (D. Ariz. Nov. 1, 2010) (quoting A.R.S. § 16-515).

Plaintiff filed a Motion for Temporary Restraining Order on October 28, 2010, to prevent Defendants from enforcing the per se ban on tea-party apparel at polling stations during the November 2, 2010 election. (Doc. 48 at 2.) On November 1, 2010, the Court held a hearing on Plaintiff's motion at which Elections Director Karen Osborne testified that an "AFL-CIO t-shirt lacking a specific reference to political action would not be electioneering material, while a 'tea party' t-shirt, without any additional specific reference to political action, would be electioneering material." *Reed*, 2010 WL 4394289, at *3. The Court granted the Temporary Restraining Order ("TRO"), finding Plaintiff demonstrated a likelihood of success on the merits of Plaintiff's claims that (1) Defendants violated Plaintiff's equal protection rights by engaging in viewpoint discrimination and that (2) Defendants violated Plaintiff's due process rights by failing to issue a clear objective standard defining "political or electioneering materials" as used in A.R.S. § 16-515. *Id.*

Because the Legislature of the State of Arizona subsequently amended A.R.S. § 16-515 by removing the prohibition against "political" materials and clearly defining "electioneering," the Court dismissed Plaintiff's complaint as moot. (Doc. 45 at 2.) Plaintiff now seeks attorneys' fees as a "prevailing plaintiff in a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983." (Doc. 48 at 3.) Plaintiff claims he is a prevailing party because the Court granted the TRO that "enjoined Defendants' enforcement of their unconstitutional policy." (*Id.* at 5.) Defendants argue that Plaintiff merely "obtained an emergency and short-lived injunction," which does not make Plaintiff a prevailing party. (Doc. 49 at 2.)

**B.     Law Governing Entitlement to Attorneys' Fees**

The Court, in its discretion, may award reasonable attorneys' fees to a prevailing party in a 42 U.S.C. § 1983 case. 42 U.S.C. § 1988. A plaintiff is a prevailing party when the plaintiff (1) "wins on the merits of its claim, (2) [receives relief that] materially alters the legal relationship between the parties by modifying the defendant's behavior, and (3) that relief directly benefits the plaintiff." *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189, 1197 (9th Cir. 2007) (quoting *Martinez v. Wilson*, 32 F.3d 1415, 1422 (9th Cir. 1994)).

A plaintiff does not need to obtain a final judgment on the merits to "win" on the merits of its claim. *UFO Chuting of Haw.*, 508 F.3d at 1197 (citing *Hanrahan v. Hampton*, 446 U.S. 754, 756-57 (1980)). Instead, a plaintiff can satisfy the first and third prevailing-party criteria by obtaining "a preliminary injunction that results in a direct and substantial benefit" to the plaintiff. *UFO Chuting of Haw.*, 508 F.3d at 1197. For a plaintiff to satisfy the second criterion of the prevailing-party test, the resulting change in the legal relationship between the plaintiff and defendant must not be the result of the defendant's voluntary actions but instead must be the product of a "judicial imprimatur." *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). "A preliminary injunction issued by a judge has all the judicial imprimatur necessary" for the plaintiff that wins the injunction to be deemed a prevailing party for purposes of § 1988 if the plaintiff's claim subsequently becomes moot. *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) (internal quotation marks omitted) (noting that a plaintiff that won a preliminary injunction, but ultimately lost on the merits of its claim, would not be a prevailing party).

The question before the Court is whether the TRO given to Plaintiff is sufficiently similar to a preliminary injunction as to qualify Plaintiff as a prevailing party and therefore entitle Plaintiff to attorneys' fees. "The standard for issuing a [TRO] is identical to the standard for issuing a preliminary injunction." *Reed*, 2010 WL 4394289, at *2 (quoting *Brown Jordan Int'l, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002)). If a TRO alters the legal relationship between parties and does not merely maintain

the status quo, the party that was awarded the TRO may be a prevailing party. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1161 (9th Cir. 2000); *Sound v. Koller*, Civ. No. 09-00409, 2010 WL 1992194, at *2-4 (D. Haw. Mar. 19, 2010) (finding that a TRO afforded plaintiffs "prevailing party status").

### C. Application of Law to Facts

The TRO gave Plaintiff a sufficient amount of relief on the merits of his claim for Plaintiff to be a prevailing party. The TRO did not merely maintain the status quo. The reason Plaintiff brought a claim against Defendants was because Defendants' per se ban on tea-party apparel would prevent Plaintiff from being able to wear tea-party apparel to a polling station. Defendants did not voluntarily decide to lift the ban or refrain from enforcing it on November 2, 2010. Instead, by issuing the TRO, the Court prevented Defendants from enforcing their "likely" unconstitutional ban, which gave Plaintiff the very relief he sought. Plaintiff thus won a victory in the litigation process based on the merits of his claim that directly benefitted Plaintiff and altered the legal relationship between Plaintiff and Defendants.

Defendants argue that "[f]undamental fairness precludes imposing fee liability on Defendants for a preliminary proceeding that, by its nature, denied Defendants an adequate opportunity to develop and present the controlling facts and law." (Doc. 53 at 3.) The Court acknowledges that the process for obtaining a TRO can sometimes prevent the party opposing a TRO from having the opportunity to adequately expound its position. However, in this case, the Court denied Plaintiff's request for an ex parte TRO and instead ordered a hearing to allow both parties to present arguments and testimony as to why a TRO was or was not appropriate. (Doc. 10 at 2.) The Court finds that awarding Plaintiff attorneys' fees and litigation expenses is not fundamentally unfair.

### II. Reasonableness of Attorney's Fees

#### A. Facts

Plaintiff requests $70,270.00 for attorneys' fees and $954.00 for other litigation costs. (Doc. 54 at 10.) Plaintiff claims that he incurred the requested fees and costs through the

- 4 -

process of obtaining injunctive relief, responding to Defendants' Motion to Dismiss, and preparing the Motion for Fees. (Doc. 52 at 9.) According to Plaintiff, the amount requested for fees represents

> reasonable nontaxable litigation expenses, as well as hours of professional services reasonably and necessarily performed by experienced, highly-skilled, and well-regarded attorneys, all of which are customarily requested in civil-rights cases and consistent with the customary hourly rates for civil-rights cases both nationally and in Maricopa County, Arizona area.

(*Id.* at 8.).

Plaintiff requests attorneys' fees for the following amount of hours spent by each of Plaintiff's attorneys at the rate at which that attorney bills: Diane Cohen, 139.45 hours at $425 per hour; Christina Kohn, 21.8 hours at $210 per hour; Clint Bolick, 11.4 hours at $450 per hour; Aditya Pawar (law clerk), 7 hours at $127 per hour; and Steven Grothouse (law clerk), 4 hours at $100 per hour. (Doc. 52 at Exh. 5, pg. 13, Doc. 54 at Exh. 6.) As required by LRCiv 54.2(e), Plaintiff provided a detailed explanation for each time entry and provided receipts for the expenses incurred. (Doc. 52 at Exhs. 2, 3.)

Plaintiff also explained the reasonableness of the rates billed in accordance with LRCiv 54.2(d)(4)(B). Plaintiff attests that after reviewing "civil rights and other civil litigation cases in the Phoenix area," Plaintiff "discovered that hourly rates for comparable attorneys in the Phoenix legal community customarily ranged between $200 and $500 per hour and that hourly rates for comparable paralegals and administrative staff ranged from $75 and $150 per hour." (Doc. 52 at Exh. 5, pg. 8.) Plaintiff also documented that hourly rates awarded to attorneys in Arizona federal district court cases between 2007 and 2009 "generally ranged between $110 and $400 per hour." (*Id.*) Finally, Plaintiff used the Laffey Matrix,[1] which is produced by the Civil Division of the United States Attorney's Office for the District of Columbia for the purpose of calculating hourly rates in fee shifting cases, like the present case, for attorneys of different levels of experience in Washington D.C. *See*

---

[1] Named after the case that first used the index, *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, (D.D.C. 1983) *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984).

*Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1067 (N.D. Cal. 2010). Plaintiff adjusted the Laffey Matrix calculations for Phoenix based upon "the federally-compiled cost of living data available at the U.S. Office of Personnel Management, 2011 General Schedule of Locality Pay." (Doc. 52 at Exh. 5, pg. 10.) According to Plaintiff's adjusted Laffey Matrix calculations, the reasonable rate for an attorney in Phoenix with twenty years of experience or more from 2010 to 2011 was $446 per hour, an attorney with one to three years of experience was $216 per hour, and paralegals and clerks billed at $127 per hour. (*Id.*) At the time of this litigation, Clint Bolick and Diane Cohen each had over twenty years of experience; Christina Kohn had less than one year of experience; and Aditya Pawar and Steven Grothouse were law clerks. (*Id.* at Exh. 5, pgs. 2, 5, 6.)

Defendants claim Plaintiff's request is unreasonable for the following reasons: (1) Plaintiff did not sufficiently demonstrate that the attorneys' hourly rates were reasonable; (2) Plaintiff's attorneys billed for previously completed work; (3) multiple attorneys unnecessarily performed the same tasks; and (4) an inordinate amount of the fees and costs requested are related to attorneys preparing Plaintiff's Motion for Fees. (Doc. 53 at 6.)

### B.  Law Governing Reasonableness of Attorneys' Fees Award

A prevailing plaintiff in a federal civil rights case should recover its attorneys' fees unless special circumstances would make an award of fees unjust. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The Ninth Circuit Court of Appeals uses the "lodestar" method to determine the permissible amount of attorneys fees under 42 U.S.C. §1988. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). "The lodestar method multiplies the number of hours 'the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'" *Id*. (quoting *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995)). The resulting calculation is "the presumptively accurate measure of reasonable [attorneys'] fees." *Id.*[2]

---

[2] The Court may adjust the lodestar calculation upward or downward after consideration of the following factors:

To meet the prevailing plaintiff's burden of establishing that the hours listed in an attorneys' fees request are reasonable, the plaintiff "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" and provide adequate documentation supporting the hours expended. *Hensley*, 461 U.S. at 434. Additionally, under § 1988, "[t]he burden is on the plaintiff to produce evidence 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). After the plaintiff meets its burden, the defendant may then provide rebuttal evidence of a lower hourly rate. *Sorenson*, 239 F.3d at 1145.

### C. Application of Law to Facts

#### *1. Reasonableness of Hourly Rates*

Defendants first claim that Plaintiff did not meet his burden of proving that the requested hourly rates are in line with the prevailing market rates in the relevant community. (Doc. 53 at 6.) However, Defendants do not state how Plaintiff's calculation and supporting evidence are insufficient. As required by LRCiv 54.2(d)(4)(B), Plaintiff provided an affidavit from Diane Cohen, Plaintiff's lead attorney, that explained the factors relied upon in determining a reasonable hourly rate. (Doc. 52 at Exh. 5, pgs. 7-11.) According to

---

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Ballen*, 466 F.3d at 746. However, the lodestar amount should only be adjusted in "rare circumstances." *Id.* After review of the factors, the Court determines an adjustment of the lodestar calculation is not appropriate.

1 Cohen's affidavit, Plaintiff evaluated and presented evidence of the following: civil-litigation rates in Phoenix, attorneys' fees awards in Arizona federal district court, and customary civil-rights litigation rates in Phoenix based on the Laffey Matrix. *Id.* The Laffey Matrix is "a widely recognized compilation of attorney and paralegal data" and is "especially useful when the work to be evaluated was performed by a mix of senior, junior, and mid-level attorneys, as well as paralegals." *Craigslist*, 694 F. Supp. 2d at 1067. *But see Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) (stating that the Ninth Circuit could not fault a district court for declining to use the Laffey Matrix because it is not necessarily a sound basis for determining rates outside of Washington D.C.). Plaintiff also provided an affidavit from a practicing attorney in the relevant areas of law and location that supported Plaintiff's hourly rates. (Doc. 52 at Exh. 4.)

Defendant did not provide any specific reasons for disputing Plaintiff's hourly rates, but instead merely asserted that the rates were "unreasonable for this litigation." (Doc. 53 at 6.) Defendant's conclusory response is insufficient to rebut Plaintiff's evidence of reasonableness. *See* LRCiv 54.2(f). The Court finds that Plaintiff's requested rates are reasonable.

### 2. *Reasonableness of Hours Expended*

Defendants' remaining claims challenge the reasonableness of the number of hours in Plaintiff's attorneys' fees request. (Doc. 53 at 6.) Plaintiff provided sufficient documentation showing that the hours expended by Plaintiff's attorneys were reasonable and were not "excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434. Plaintiff's documentation also adhered to the procedural requirements of LRCiv 54.2(d).

In response, Defendant alleges that Plaintiff's billing is excessive given that Plaintiff had already been compensated for similar work in a "nearly identical" lawsuit.[3] (Doc. 53 at

---

[3] Plaintiff's attorneys filed a lawsuit against the Coconino County Recorder a few weeks prior to the commencement of this suit challenging Coconino County's interpretation of state and local electioneering rules. Complaint, *Wickberg v. Owens*, No. CV 10-8177 (D. Ariz. Sept. 20, 2010) ECF No. 1.

1  6.)  However, the Court agrees with Plaintiff that the hours listed in Plaintiff's fee request
2  reflect Plaintiff's attorneys' experience gained from other matters including the "nearly
3  identical" lawsuit.  (Doc. 54 at 6.)

4  Defendants also claim that Plaintiff's billing is excessive because multiple attorneys
5  performed the same task.  (Doc. 53 at 7.)  Although Defendants claim there were several
6  situations where this occurred, Defendants only offer one: the presence of three attorneys at
7  the TRO hearing.  (*Id.*)  Given the essential character of the TRO hearing and the minimal
8  amount of time Plaintiff's attorneys had to prepare for the hearing, the Court does not find
9  it unreasonable for Plaintiff to have three attorneys at the hearing to ensure that Plaintiff
10 received immediate relief.

11 Finally, Defendants complain about the amount of time spent by Plaintiff's attorneys
12 in their quest for attorneys' fees.  (Doc. 53 at 8.)  The Court has little sympathy for
13 Defendants given Plaintiff's numerous attempts to settle the matter before unnecessary
14 litigation expenses would be incurred as evidenced by Plaintiff's Statement of Consultation,
15 which Defendants did not dispute.  (Doc. 52 at Exh. 5, pgs. 14, 15.)

16 Defendants also did not adhere to the procedural requirements of LRCiv 54.2(f),
17 which requires Defendants' responsive memorandum to "separately identify each and every
18 disputed time entry or expense item."  LRCiv 54.2(f).  Like Defendants' challenge to
19 Plaintiff's hourly rates, Defendants again offer only conclusory statements that challenge
20 Plaintiff's itemized listing of hours expended.  Thus, Defendants' challenge to Plaintiff's
21 request for attorneys' fees fails substantively and procedurally.

22 **III.  Conclusion**

23 By obtaining the TRO, Plaintiff is a prevailing party in this litigation.  Plaintiff
24 followed the procedural requirements of LRCiv 54.2 and provided sufficient evidence that
25 the requested rates and hours were reasonable.  Plaintiff also appropriately and accurately
26 calculated the total amount of attorneys' fees using the lodestar method.  The Court
27 determines an adjustment of the lodestar award is not appropriate in this case.

28 Accordingly,

1    IT IS ORDERED GRANTING Plaintiff's Motion for Award of Attorneys' Fees and Costs (Doc. 48) for the amount requested in Plaintiff's Memorandum of Points and Authorities in Support of Motion for Fees and Costs (Doc. 52), plus the amount requested in Plaintiff's Reply in Further Support of his Memorandum and Points of Authorities (Doc. 54) for a total amount of $71,224.00.

DATED this 31st day of October, 2011.

_____
James A. Teilborg
United States District Judge